# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **XPO LOGISTICS, INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:23-CV-01087-RP** |
| | § | |
| **TRANS BORDER XPRESS INC,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff XPO Logistics, Inc.'s Motion for Default Judgment. Dkt. 15. After reviewing XPO's motion and the relevant caselaw, the undersigned recommends that the motion be granted.

## I.    BACKGROUND

This case concerns claims of the breach of the duties and obligations of a common carrier under the Carmack Amendment. *See* Dkt. 5, at 3. XPO hired Defendant Trans Border Xpress, Inc. ("TBX") to transport automotive parts ("Cargo") from Texas to Missouri.[1] *Id.* at 2. At the time TBX received the Cargo, the Cargo was in good order and condition. *Id.* at 3. While TBX was transporting the Cargo in one of its trucks, the truck was involved in an accident which resulted in a fire that destroyed the Cargo. *Id.* at 2. TBX failed to deliver the Cargo in the same condition

---

[1] Because TBX has not filed a responsive pleading, there are no issues of material fact, and the undersigned will accept XPO's version of the facts as true. *Atain Specialty Ins. Co. v. Crown Inn, Inc.*, No. MO:18-CV-143-DC, 2020 WL 13401729, at *2 (W.D. Tex. Feb. 22, 2020).

1

that TBX received it in. *Id.* XPO filed a timely claim with TBX for the loss of the Cargo, but TBX neither denied nor paid any portion of the claim. *Id.*

XPO retained TBX on behalf of Ford to transport the Cargo; thus, XPO was liable to Ford for any damage to the Cargo. *Id.* at 2. Pursuant to their contract, Ford did not pay invoices totaling $221,379.60 it already owed to XPO. *Id.* at 3. This was done to offset the cost of the damaged Cargo, which also totaled $221,379.60. *Id.* XPO then sued TBX under the Carmack Amendment to recover the value of the damaged Cargo. *Id.*

XPO served TBX with its First Amended Complaint in March 2024. Dkts. 10, 15. TBX failed to timely answer, and XPO subsequently moved for entry of default. *See* Dkt. 12. The Clerk's Office then entered default. Dkt. 15, at 1. TBX has not made an appearance in this lawsuit. XPO now requests that the Court enter a default judgment against TBX. *Id.*

## II.    LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)-(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather,

a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering XPO's motion, the Court must determine: (1) whether a default judgment is procedurally warranted; (2) whether XPO's complaint sets forth facts sufficient to establish that they are entitled to relief; and (3) what form of relief, if any, XPO should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

### III.   DISCUSSION

### A.   Procedural Requirements

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against TBX. First, because TBX has not filed any responsive pleading, there are no material facts in dispute. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's

well-pleaded allegations of fact."). Second, TBX's failure to appear and respond has brought the adversary process to a halt, prejudicing XPO's interest in pursuing its claim for relief. *See J & J Sports*, 126 F. Supp. 3d at 814 ("Defendant's failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (internal citation and quotation marks omitted). Third, the grounds for default are established: TBX was properly served, did not answer the complaint by the answer deadline, and has failed to appear and participate at all. *See* Dkt. 15, at 1; Fed. R. Civ. P. 12(a)(1)(A)(i) (requiring defendants to serve an answer within 21 days after being served with the summons and complaint). Fourth, there is no indication that the default was caused by a good faith mistake or excusable neglect. Fifth, a default judgment would not be overly harsh because XPO merely seeks the relief to which it is entitled under the law. Finally, there are no facts to suggest that there may be good cause to set aside a default judgment if challenged by TBX. The undersigned therefore finds that default judgment is procedurally warranted.

### B.    Sufficiency of XPO's Complaint

Default judgment is proper only if the well-pleaded factual allegations in XPO's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under the Carmack Amendment, "in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows [1] delivery in good condition, [2] arrival in damaged condition, and [3] the amount of damages." *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). XPO alleges (1) that the Cargo was in good order and condition when TBX received it, (2) that the Cargo was never delivered because it was destroyed, and (3) that the total value of the destroyed Cargo was $221,379.60. As noted, XPO's allegations are deemed to be true. Accordingly, the undersigned finds that XPO has adequately pleaded its Carmack Amendment claim.

### C.   **Damages**

####    1.   Monetary Damages

The evidence supports a finding that the value of the Cargo that was destroyed by the accident and subsequent fire was $221,379.60. *See* Dkt. 15, at 7. XPO alleges that Ford did not pay invoices that Ford owed to XPO in an amount equivalent to the value of the destroyed Cargo in order to set off that cost. Thus, XPO suffered a

$221,379.60 loss from the destruction of the Cargo while the Cargo was being transported by TBX. Based on this undisputed evidence, the undersigned recommends that XPO be awarded actual damages in the amount of $221,379.60.

### 2.    Costs

In addition to the actual damages, XPO seeks to recover all costs of court and is entitled to do so. 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1).    Therefore, the undersigned recommends awarding XPO all costs of court.

### 3.    Interest

XPO requests prejudgment interest, at a rate of 8.5% per annum, from the date the First Amended Complaint was filed, November 11, 2023, to the day prior to the date the judgment is signed.

The Fifth Circuit uses a two-step analysis to determine whether prejudgment interest should be awarded. *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994). The first question is whether "the federal act creating the cause of action preclude[s] an award of prejudgment interest." *Id.* Second, the Court must determine whether "an award of prejudgment interest further[s] the congressional policies of the federal act." *Id.*

The Carmack Amendment does not prohibit the award of prejudgment interest. *See* 49 U.S.C. § 14706. Further, Congress intended for shippers to be fully compensated for goods that are damaged by a carrier, and courts have awarded prejudgment interest in Carmack cases. *See, e.g.*, *Eagle Transp., L.L.C. v. Scott*, No.

2:11-CV-96-KS-MTP, 2012 WL 1252616, at *4 (S.D. Miss. Apr. 13, 2012). Thus, the award of prejudgment interest is appropriate here.

Because federal law does not specify a prejudgment interest rate, the Court will defer to state law for guidance. *Id.* According to Texas law, prejudgment interest accrues as simple interest at a rate equivalent to the prime rate set by the Governors of the Federal Reserve on the date the judgment is entered.[2] Tex. Fin. Code § 304.003(c), 304.104; *see also Fairmont Specialty Ins. Co. v. Apodaca*, 234 F.Supp.3d 843, 856 (S.D. Tex. 2017) (using Texas Finance Code to determine prejudgment interest). Thus, the undersigned recommends granting prejudgment interest from November 11, 2023, to the day prior to the date the judgment is signed, at a rate equivalent to the prime bank loan set by the Federal Reserve on the date preceding the judgment.

Finally, the undersigned recommends granting XPO the requested postjudgment interest as well. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.A. § 1961(a). The weekly average 1-year constant maturity Treasury yield should be determined upon the District Judge's review of this recommendation.

---

[2] Under Texas law, "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." Tex. Fin. Code § 304.104. Here, because there is no evidence of written notice of the claim, the date the suit was filed, November 11, 2023, should be used to calculate prejudgment interest. Dkt. 5.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff XPO's Motion for Default Judgment against Defendant TBX. Dkt. 15. XPO should be awarded $221,379.60, representing XPO's actual damages, plus all costs of court, prejudgment interest, and postjudgment interest in amounts to be determined when judgment is entered. The undersigned **RECOMMENDS** that the District Court **DENY** any relief not accurately accounted for herein. The referral of this case should now be **CANCELED**.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 19, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE